Filed 9/9/24  P. v. Strawther CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHEMA STRAWTHER,<br><br>    Defendant and Appellant. | C099325<br><br>(Super. Ct. No. 11F06454) |

Defendant appeals from the trial court's denial of his Penal Code former section 1170.95 petition.  (Statutory section citations that follow are found in the Penal Code unless otherwise stated.)  Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  For ease of exposition, we will refer to this provision as section 1172.6 throughout.)  Defendant argues the court erred in denying his petition at the prima facie stage without conducting an evidentiary hearing.  Because the record of conviction conclusively establishes defendant was the actual killer, we affirm the judgment.

1

FACTS AND HISTORY OF THE PROCEEDINGS

In 2011, the People charged defendant with murder (§ 187, subd. (a)), assault with a firearm (§ 245, subd. (a)(2)), discharge of a firearm at an inhabited dwelling (§ 246), and being a felon in possession of a firearm (former § 12021, subd. (a)(1)). The People alleged several firearm allegations, including that defendant personally and intentionally discharged a firearm causing the death of the victim (§ 12022.53, subd. (d)). The People also alleged the special circumstance that the murder was committed while defendant was engaged in the commission of a robbery (§ 190.2, subd. (a)(17)).

At trial, the court instructed the jury on two theories of first degree murder: (1) willful, deliberate, and premeditated murder; and (2) felony murder. The title of the felony murder instruction given to the jury specified that "Defendant Allegedly Committed Fatal Act." The court did not instruct the jury with CALCRIM No. 520B, which applies when a coparticipant allegedly committed the fatal act, or CALCRIM No. 520C, which applies when other acts allegedly caused the death. The court did not provide any instructions on aiding and abetting liability or the natural and probable consequences doctrine. During summation, the prosecutor argued the defendant "fire[d] one shot into the back of [the victim's] head. No clearer case of first degree murder under either theory." The prosecutor made no reference to an accomplice.

As to the allegation that defendant personally and intentionally discharged a firearm causing death, the trial court instructed the jury that "[a]n act causes death if the death is the direct, natural, and probable consequence of the act and death would not have happened without the act." In closing argument, the prosecutor said that "[i]ntentional discharge is a no-brainer. Once you get to murder under either first or second, obviously he's the guy that pulled the trigger. There is no other possible interpretation of the evidence."

2

In defense, defendant claimed he was not at the scene of the murder, that he did not even know the victim, and that someone else must have been the culprit.

The jury found defendant guilty of first degree murder and all the other charged offenses. The jury found true that defendant personally and intentionally discharged a firearm causing the death of the victim. The trial court declared a mistrial on the felony murder special circumstance allegation. The court sentenced defendant to 75 years to life plus 22 years eight months.

In 2022, defendant petitioned under section 1172.6 for resentencing. The trial court denied the petition at the prima facie stage because "the record of conviction in the present case establishes as 'a matter of law the jury found defendant personally killed the victim.'"

Defendant timely appealed.

### DISCUSSION

Defendant argues the trial court erred in denying his section 1172.6 petition at the prima facie stage because the record of conviction does not conclusively establish his ineligibility.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To that end, the bill amended section 189, subdivision (e) to limit the circumstances under which a person may be convicted of felony murder. One such circumstance is when the defendant is the "actual killer." (§ 189, subd. (e)(1).)

Senate Bill 1437 also added what is now section 1172.6, which applies these changes retroactively by permitting qualifying individuals who were "convicted of felony

3

murder or murder under the natural and probable consequences doctrine . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts" when certain conditions apply.  (§ 1172.6, subd. (a).)  One of the required conditions is that the "petitioner could not presently be convicted of murder" after the amendments enacted by Senate Bill 1437.  (§ 1172.6, subd. (a)(3).)  Once a complying petition is filed, the trial court appoints counsel if requested, the parties submit briefs, and the trial court makes a prima facie determination of eligibility.  (*People v. Lewis* (2021) 11 Cal.5th 952, 966.) The prima facie inquiry is "limited" and courts must take " ' "petitioner's factual allegations as true." ' "  (*Id.* at p. 971.)  " 'However, if the record [of conviction], including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Ibid.*)  The record of conviction includes charging documents, trial evidence, closing arguments, verdict forms, and jury instructions.  (See *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935; *People v. Ervin* (2021) 72 Cal.App.5th 90, 102; *People v. Lopez* (2022) 78 Cal.App.5th 1, 13.)

To have found defendant guilty of first degree murder in this case, the jury had to rely on either a theory of willful, deliberate, and premeditated murder or a theory of felony murder.  There is no dispute that if the jury relied on the former theory, defendant could still presently be convicted of murder.  But the parties disagree as to whether a conviction under a felony-murder theory would still be valid today.  Defendant maintains it would not because the jury never expressly found he was the actual killer.  The People submit that the record of conviction necessarily establishes defendant was the actual killer, primarily because of the section 12022.53, subdivision (d) enhancement.

The People have the better argument.  Defendant was the only person charged with the murder and the prosecution proceeded on a theory that he was the sole perpetrator.  The jury was not instructed on aiding and abetting liability or any theory that

4

would suggest defendant was present and a participant in the crimes but not the actual killer. Nor did defendant present such a theory. Further, it is uncontroverted that the victim died from being shot in the head. In these circumstances, there is simply no possibility the jury concluded defendant personally and intentionally discharged a firearm causing the victim's death without also implicitly concluding defendant was the actual killer. (See *People v. Harden* (2022) 81 Cal.App.5th 45, 54 ["The key question in determining whether the trial court properly denied [a section 1172.6] petition is whether it was *possible* for a juror to have" found the defendant guilty of felony murder "without also finding [he] personally killed the victim," italics added].)

Other courts that have considered this issue are in accord. In *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, review denied (June 12, 2024), the trial court had erred in denying a section 1172.6 at the prima facie stage without appointing counsel and by relying on substantive facts from a prior appellate opinion. (*Beaudreaux*, at p. 1239.) The appellate court concluded these errors were harmless because the jury must have decided the defendant was the actual killer. (*Id.* at pp. 1244-1248.) There, as here, the jury found true that the defendant had personally and intentionally discharged a firearm causing the victim's death. (*Id.* at pp. 1233-1235.) The court explained: "[R]eading all the charges, the instructions, the verdicts, and the findings as a whole, we see no legal route *Beaudreaux's* jury could have taken to convict him without finding he was [the victim's] actual killer. . . . [¶] We conclude no reasonable juror who found that *Beaudreaux* personally discharged his gun and caused great bodily injury and death might have believed [another person] personally did the same thing, with *Beaudreaux* only indirectly involved in the fatal act, but liable for it nonetheless. Stated in terms framed by the pivotal legal issue here, we believe it would have been impossible on this record for a jury to have made the findings it did without finding that *Beaudreaux* was [the victim's] actual killer." (*Id.* at pp. 1247-1248; see also *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 [denying section 1172.6 petition where "the jury implicitly found

5

Cornelius was the 'actual killer,' " because it "found true that he personally and intentionally used a firearm to commit the crime"].)

Defendant acknowledges that the "felony murder instruction required proof only that [defendant] 'allegedly committed [the] fatal act' " and that the felony murder and firearm enhancement instructions required proof only that defendant "caused" the victim's death. But defendant insists that these are not the "equivalent to being the actual killer" because the jury could have concluded he proximately caused the victim's death without deciding that he personally inflicted the fatal injury. In support, defendant cites to *People v. Lopez* (2021) 73 Cal.App.5th 327, 333 for the proposition that section 12022.53, subdivision (d) requires only proximate causation, not actual causation.

We are not convinced. As an initial matter, defendant draws no meaningful distinction between "committ[ing] the fatal act" and being the actual killer. That aside, defendant's interpretation considers the jury's findings in a vacuum, divorced from everything else in the record of conviction. That is not the nature of the prima facie inquiry. Rather, the record of conviction must "necessarily inform the trial court's prima facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) As explained above, the record of conviction here conclusively establishes defendant was the actual killer.

Defendant also relies on *People v. Vang* (2022) 82 Cal.App.5th 64 and *People v. Lopez*, *supra*, 78 Cal.App.5th 1 but those cases are distinguishable.

In *People v. Vang*, *supra*, 82 Cal.App.5th 64, the defendant coerced his wife into a vehicle and, as he was driving away, his wife opened the door and jumped, resulting in her death. (*Vang*, at p. 69.) At trial, "[t]he prosecution argued that even if defendant did not personally kill [his wife], he still was liable for her murder because he committed an inherently dangerous felony—the kidnapping—that proximately caused her death." (*Id.* at p. 80.) In concluding that the prosecution failed to prove defendant was the "actual

6

killer," the appellate court explained that the term "actual killer" meant the person who "directly caused" the death by personally committing the homicidal act, not someone who proximately caused death by means of some other unlawful activity. (*Id*. at pp. 88, 91.)

In *People v. Lopez, supra*, 78 Cal.App.5th 1, the "[d]efendant's theory at trial was that he was neither the actual killer nor involved in the robbery. Defendant testified that although he went with [another person] to the victim's apartment, he did not kill the victim or participate in the robbery or even enter the bedroom in which the victim was later found." (*People v. Lopez, supra*, 78 Cal.App.5th at p. 16.) The appellate court held that the jury's first degree murder verdict did not conclusively establish defendant was the actual killer because the jury did not find defendant "personally killed the victim." (*Id*. at p. 19.) The court explained it was possible the jury believed defendant's testimony that he went to the victim's apartment with another person but also believed that defendant was involved in the robbery that resulted in the death without being the actual killer. (*Id*. at pp. 19-20.)

The primary distinction between these cases and the present case is that in both *Vang* and *Lopez* it was possible, based on the record of conviction, that the jury concluded defendant proximately caused the victim's death without also concluding defendant was the actual killer. Nothing in the record of conviction in the present case would have permitted the jury to conclude defendant proximately caused the victim's death by personally and intentionally discharging a firearm without also concluding defendant was the actual killer. Moreover, unlike in *Vang* and *Lopez*, the jury here specifically concluded that defendant's *discharge of a firearm*—and not some unspecified "act" or other crime—is what caused the victim's death. As noted, it is uncontroverted that the victim died from a gunshot wound to the head.

Defendant also argues the trial court engaged in improper factfinding. We disagree. Without resolving any factual conflicts or making any credibility

7

determinations, the court properly assessed what legal theories were available based on what was presented to the jury and the jury instructions. (Cf. *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, fn. 2, 223, 232-233 [concluding "Delgadillo is not entitled to any relief under section 1172.6" at the prima facie stage where the record of conviction "makes clear that Delgadillo was the actual killer *and the only participant in the killing*," italics added]; *People v. Hurtado* (2023) 89 Cal.App.5th 887, 889 ["Here is something novel—a criminal case that need not undergo a hearing pursuant to Penal Code section 1170.95 (now section 1172.6). Why? Because the defendant was the only person who committed the crime . . . for which a jury found him guilty beyond a reasonable doubt"], fn. omitted.)

## DISPOSITION

The postjudgment order denying defendant's section 1172.6 petition is affirmed.

_____
HULL, Acting P. J.

We concur:

_____
MAURO, J.

_____
WISEMAN, J.*

_____

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.